IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GEORGE D. ALLEN,

    Plaintiff,

vs.          Case No. 09-1271-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

    Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On June 11, 2007, administrative law judge (ALJ) Evelyn M. Gunn issued her decision (R. at 16-21). Plaintiff alleges that he has been disabled since January 7, 2003 (R. at 16). Plaintiff is insured for disability insurance benefits through June 30, 2007 (R. at 17). At step one, the ALJ determined that plaintiff has not performed substantial gainful activity since January 7, 2003, the alleged onset date of disability (R. at 17). At step two, the ALJ found that plaintiff had an impairment or

4

combination of impairments that would be considered severe (R. at 17). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17). After determining plaintiff's RFC (R. at 19), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 19). At step five, the ALJ found that plaintiff can perform other work that exists in significant numbers in the national economy (R. at 19-20). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19, 21).

**III. Are the ALJ's RFC findings supported by substantial evidence?**

The ALJ found that plaintiff had the following RFC:

> Based on all of the above the Administrative Law Judge concludes that claimant has at all times had the capacity to lift and carry a maximum of 20 pounds occasionally with 10 pounds frequently. He can sit for six of eight hours with a sit/stand option, stand/walk two of eight hours and has unlimited ability to push and pull. He can occasionally perform all postural positions but can never climb a ladder, rope or scaffold. He must avoid concentrated exposure to extremes of cold and hazards such as the scenery and heights and mentally he has the ability to understand simple instructions and simple tasks but may have difficulty with written instructions or written work-related material. In formulating this residual functional capacity assessment the Administrative Law Judge has considered the entire record and recognizes that claimant has been prescribed a narcotic pain medication regimen. Nonetheless he testified that he is able to lift free hand weights at

5

>     the YMCA and was lifting up to 10 pounds with
>     his left arm in therapy but could not lift
>     this weight over his head. He also swims at
>     the YMCA and according to the medical records
>     gives his daughter rides on his motorcycle,
>     all of which are compatible/consistent with a
>     range of sedentary work.

(R. at 19).

Plaintiff argues that the ALJ erred because the ALJ did not provide a proper basis for his RFC findings as required by SSR 96-8p (Doc. 11 at 15-19; Doc. 17 at 4). Defendant asserts that the RFC assessment is supported by the medical and other evidence (Doc. 14 at 18-19).

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion,

citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

In making his physical RFC findings, the ALJ did not cite to any medical evidence which addressed plaintiff's limitations regarding his ability to work. The only physical RFC assessment discussed by the ALJ was the assessment prepared by Dr. Rettinger, plaintiff's treating physician. Dr. Rettinger opined

7

that plaintiff could stand and/or walk for less than 1 hour in an 8 hour workday, and could sit for less than 1 hour in an 8 hour workday. Dr. Rettinger also indicated that plaintiff would need to lie down every hour for 15-30 minutes due to pain (R. at 687-688). The ALJ rejected the assessment by Dr. Rettinger, indicating that other medical reports[1] were more consistent with the record (R. at 18). Therefore, the ALJ gave greater weight to the opinions contained in Dr. Alexander's assessment of plaintiff's physical impairments (R. at 18). However, the assessment by Dr. Alexander, although noting a number of medical findings, did not discuss whether or not plaintiff had any exertional or nonexertional limitations, or the extent of those limitations (R. at 516-520). Furthermore, the ALJ did not cite to any physical RFC assessment in support of his RFC findings.[2]

In the case of <u>Fleetwood v. Barnhart</u>, 211 Fed. Appx. 736 (10th Cir. Jan. 4, 2007), the court held as follows:

> **...no other medical evidence in the record specifically addresses her ability to work. Dr. McGouran did not address her RFC or her ability to work in any of his treatment**

---

[1]These reports included mental consultative exams by Dr. Swearngin (R. at 510-515A) and Dr. Bean (R. at 590-594), and a physical consultative exam by Dr. Alexander (R. at 516-520).

[2]The only other physical RFC assessment in the record is a state agency assessment dated August 18, 2004. It was signed by a SDM (single decision maker), and was later approved by Dr. Kim on November 17, 2004 (R. at 521-528). However, it was not mentioned in the ALJ's decision, and therefore will not be considered by the court.

8

**notes. Those notes are therefore insufficient to draw reliable conclusions about her ability to work**. [footnote omitted] **Dr. Seitsinger, the consulting doctor, who actually physically examined her, did not form specific conclusions regarding her ability to work**. He stated only that she had conversational dyspnea and dyspnea with range of motion testing, both related to her obesity. Also, he noted that she could walk without assistive devices for short distances and could manipulate fine and gross objects. He did not state what effect her panic attacks or anxiety, both of which he assessed, would have on her ability to work. Nor did he indicate her ability to stand or sit during an eight-hour workday or what effect her assessed shortness of breath with a history of bronchitis and COPD would have on her ability to work. **To the extent there is very little medical evidence directly addressing Ms. Fleetwood's RFC, the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination.**

The ALJ's inability to make proper RFC "findings may have sprung from his failure to develop a sufficient record on which those findings could be based." <u>Washington v. Shalala</u>, 37 F.3d 1437, 1442 (10th Cir.1994). **The ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Soc. Sec. R. 96-8p, 1996 WL 374184, at \*5**. Because the disability hearing is nonadversarial, an ALJ is obligated to develop the record even where, as here, the claimant is represented by counsel. <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1492 (10th Cir.1993); <u>accord</u> <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164, 1168 (10th Cir.1997). Even though Ms. Fleetwood's counsel did not request any additional record development, the need for additional evidence is so clearly established in this record that the ALJ was obliged to obtain more evidence

9

>   regarding her functional limitations. See
>   Hawkins, 113 F.3d at 1167-68.

Fleetwood, 211 Fed. Appx. at 741 (emphasis added).  Because the ALJ's RFC assessment was not based on substantial evidence, the court reversed the district court's affirmance on this issue and remanded the case with directions to remand to the Commissioner for further proceedings.  211 Fed. Appx. at 741.  See Martin v. Astrue, Case No. 09-1235-SAC (D. Kan. June 28, 2010)(case remanded because there was no medical evidence in the record that supported the ALJ's RFC findings); Essman v. Astrue, Case No. 09-4001-SAC (D. Kan. Dec. 16, 2009, Doc. 23 at 14-16)(relying on Fleetwood, case remanded when the ALJ either rejected or gave little weight to the opinions of a treatment provider regarding plaintiff's mental RFC, and there was no other medical opinion evidence in the record which discussed plaintiff's mental limitations).

In the case of Lamb v. Barnhart, 85 Fed. Appx. 52, 55-57 (10th Cir. Dec. 11, 2003), the ALJ rejected the opinion of Dr. Osborne, a treating physician, that plaintiff could not perform sedentary work, and the ALJ found that plaintiff had the RFC to perform light work.  The court held that the ALJ failed to provide legitimate reasons for rejecting the opinions of Dr. Osborne.  The court further held that there was no competent medical evidence in the record to support the ALJ's light work determination because: (1) the RFC assessment forms that were

prepared by the two non-examining agency physicians were found not to constitute substantial evidence since they are not accompanied by thorough written reports or persuasive testimony, and (2) except for Dr. Osborne, none of the other doctors who examined the claimant specifically addressed or defined the claimant's exertional limitations (ability to sit, stand, walk, lift, carry, push, and pull) or her nonexertional limitations (reach, handle, stoop, crouch, climb, etc.). As a result, even if the ALJ determined on remand that he is not required to give controlling weight to the opinions of Dr. Osborne, the ALJ cannot then simply conclude, as it appeared he did in the decision under review, that the claimant is therefore capable of light work. Instead, the ALJ must evaluate and make specific findings as to claimant's physical RFC, and the findings must be supported by substantial evidence. The court held that the ALJ must ensure that a sufficient record exists to evaluate the claimant's exertional and nonexertional limitations. The court noted that while the ALJ is not limited to considering only medical evidence, the ALJ's duty to develop the record may include obtaining additional evidence from a treating physician or ordering a consultative examination if the record does not otherwise contain sufficient evidence upon which to base an RFC finding.

In the case before the court (Allen), the ALJ clearly failed

to comply with the clear requirement of SSR 96-8p that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence.  The ALJ rejected the physical RFC opinions of Dr. Rettinger, plaintiff's treating physician.  However, as in <u>Fleetwood</u> and <u>Lamb</u>, none of the medical evidence of plaintiff's physical condition mentioned by the ALJ, including the assessment by Dr. Alexander, addressed plaintiff's ability to work or whether she had any exertional or nonexertional physical limitations.  None of the limitations contained in the ALJ's RFC findings are contained in Dr. Alexander's report.  The court cannot determine the source, medical or otherwise, for most, if not all, of the limitations contained in the ALJ's RFC findings.

As in <u>Fleetwood</u> and <u>Lamb</u>, the ALJ in the case before the court had very little or no medical evidence directly addressing plaintiff's physical RFC (except for medical opinion evidence from the treating physician which the ALJ rejected).  Without sufficient evidence to support his RFC findings, the court concludes that the ALJ was not in a position to make an RFC determination.  On remand, the ALJ should consider recontacting plaintiff's treating physician(s) in order to determine if additional information or clarification is available (20 C.F.R. § 404.1512(e)(1)), and/or obtain a detailed examination from a consulting physician which addresses plaintiff's functional
12

limitations. Fleetwood, 211 Fed. Appx. at 741; Lamb, 85 Fed. Appx. at 57.

The record also indicates that Dr. Maguire, plaintiff's treating surgeon, stated on May 3, 2006 that he did not think that plaintiff would every be able to perform a job that required overhead work (R. at 653). A physical RFC assessment signed by Dr. Kim stated that plaintiff was limited in reaching in all directions (including overhead) (R. at 524). However, the ALJ, without explanation, did not discuss these medical opinions, or offer any explanation for not including them in his RFC findings. An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). Furthermore, SSR 96-8p clearly states that if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. Therefore, on remand, the ALJ shall consider these opinions and their impact on plaintiff's ability to work.[3]

The ALJ's RFC finding also included a sit/stand option (R. at 19, 822). Plaintiff alleges that the ALJ erred by failing to

---

[3]At the hearing, the vocational expert (VE) testified that adding the additional limitation of no reaching in all directions with plaintiff's left hand would preclude employment (R. at 827-829).

13

specify the frequency of plaintiff's need to alternate sitting and standing (Doc. 11 at 19-20).

SSR 96-9p explains the Social Security Administration's policies regarding the impact of a RFC assessment for less than a full range of sedentary work. On the issue of alternating sitting and standing, it states the following:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. **The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.** It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added).

In the case of Armer v. Apfel, 216 F.3d 1086 (table), 2000 WL 743680 (10th Cir. June 9, 2000), the ALJ found that the claimant was limited to unskilled sedentary work that would allow him to "change positions from time to time." 2000 WL 743680 at *2. The court cited to the language quoted above in SSR 96-9p and held that the ALJ's finding that the claimant would have to change positions from time to time was vague and did not comply with SSR 96-9p. The court held that the RFC assessment must be

14

specific as to the frequency of the individual's need to alternate sitting and standing because the extent of the erosion of the occupational base will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The ALJ's findings also must be specific because the hypothetical questions submitted to the vocational expert (VE) must state the claimant's impairments with precision. Id. at *2-3.

In the case of Vail v. Barnhart, 84 Fed. Appx. 1, 2-3 (10th Cir. Nov. 26, 2003), the ALJ had made RFC findings limiting plaintiff to light work which included a limitation to allow plaintiff brief changes of position (alternating sitting and standing). The court stated as follows:

> Furthermore, if an ALJ finds that a claimant
> cannot perform the full range of work in a
> particular exertional category, an ALJ's
> description of his findings in his
> hypothetical and in his written decision must
> be particularly precise. For example,
> according to one of the agency's own rulings
> on sedentary labor, the description of an RFC
> in cases in which a claimant can perform less
> than the full range of work "must be specific
> as to the frequency of the individual's need
> to alternate sitting and standing." Social
> Security Ruling 96-9P, 1996 WL 374185
> (S.S.A.) at *7. **Precisely how long a claimant
> can sit without a change in position is also
> relevant to assumptions whether he can
> perform light work.** 20 C.F.R. § 404.1567(b).

84 Fed. Appx. at **4-5 (emphasis added). The court then held that the ALJ made a critical omission in his analysis by not

properly defining how often the claimant would need to change positions. 84 Fed. Appx. at *5.

The regulations and case law are clear that the ALJ must be specific in setting forth the frequency of a claimant's need to alternate between sitting and standing when determining whether plaintiff can perform light or sedentary work. Furthermore, this specificity must be included in the hypothetical question to the VE. Therefore, on remand, the ALJ shall include in his RFC findings the specific frequency of plaintiff's need to alternate sitting and standing in order to determine its impact on plaintiff's ability to perform work in the national economy.[4]

Finally, plaintiff alleges error by the ALJ for failing to include a sufficient limitation on plaintiff's ability to push/pull in light of the medical evidence (Doc. 11 at 19). The ALJ found that plaintiff had an unlimited ability to push and pull (R. at 19). On remand, the ALJ shall review the medical and other evidence on this issue and determine if a limitation on pushing/pulling is warranted.

**IV. Did the ALJ err in his evaluation of the opinions of Dr. Rettinger, plaintiff's treating physician?**

The opinions of physicians, psychologists, or psychiatrists

---

[4]Defendant argues that the vocational expert (VE) testified that a need to alternate sitting and standing with any frequency would not preclude plaintiff from performing other work (Doc. 14 at 20; R. at 823). However, a review of the transcript by the court does not support this assertion.

16

who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight

17

by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. <u>Watkins</u>, 350 F.3d at 1301.

In his decision, the ALJ stated the following regarding the

weight to be given to the various medical opinions:

> ...claimant's treating physician has provided a medical source statement at exhibit 32 F [Dr. Rettinger's physical and mental RFC assessments], but a review of the conclusions in their entirety show that this assessment is inconsistent with the overall record and too restrictive. The assessment does not reflect the level of impairment as demonstrated in contemporaneous treatment records. The Administrative Law Judge finds the examining physician and psychologists reports in exhibits 21 [Dr. Swearngin], 22 [Dr. Alexander] and 26 F [Dr. Bean] are much more consistent with the record.

(R. at 18). However, the ALJ failed to identify what the claimed inconsistencies were between the opinions of Dr. Rettinger and the overall record, or why his opinions were too restrictive. Likewise, the ALJ, other than to make the conclusory statement that the other medical reports were more consistent with the record, failed to offer any explanation for this conclusion, and did not cite to any evidence to support his finding.

The facts of this case are very similar to those in <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir. 2004). In <u>Langley</u>, the court held that because the ALJ failed to explain or identify what the claimed inconsistencies were between the opinions of a treating psychiatrist and the other substantial evidence of record, his reasons for rejecting that opinion were not sufficiently specific to enable the court to meaningfully review his findings. Such bare conclusions by the ALJ are beyond meaningful judicial review. <u>Clifton v. Chater</u>, 79 F.3d 1007,

1009 (10th Cir. 1996). Therefore, on remand, the ALJ shall reevaluate the medical opinions of Dr. Rettinger consistent with the standards set forth above.[5]

**V. Did the ALJ err in her analysis of plaintiff's credibility?**

Plaintiff argues that the ALJ erred in his analysis of plaintiff's credibility. The court will not reach this remaining issue because it may be affected by the ALJ's resolution of the case on remand after considering all the medical evidence and determining what weight should be accorded to the various medical opinions. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 21st day of July, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

[5] The ALJ's RFC findings included the mental limitation that plaintiff has the ability to "understand simple instructions and simple tasks but may have difficulty with written instructions or written work-related material" (R. at 19). On remand, the ALJ should make clear why these limitations were imposed, but not others. The ALJ and/or plaintiff's counsel may want to seek further information or clarification regarding the mental limitations that Dr. Rettinger previously provided (R. at 689-690).